IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RICARDO REYES RODRIGUEZ, | ) | Case No. 4:26-cv-0333 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| JERRY GREENE, *in his official capacity as* | ) | |
| *the Sheriff of the Mahoning County Jail, et al.,* | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Respondents. | ) | |

Petitioner Ricardo Reyes Rodriguez filed on February 10, 2026, a petition for writ of habeas corpus by a person in federal Immigration and Customs Enforcement ("ICE"). ECF 1, 3. The Petition named Jerry Greene, in his official capacity as the Sheriff of Mahoning County Jail, and Kevin Raycraft, Field Office Director of Enforcement and Removal Operations, Detroit Field Office, U.S. ICE (collectively, "Respondents") as the appropriate custodians. Petitioner has been in ICE custody since on or about December 27, 2025, at Mahoning County Jail. ECF 3, ¶¶ 1, 15; *see also* ECF 3-1. He now moves this Court to order his release from detention because his detention without the possibility of a valid, particularized bond hearing is unconstitutional. Respondents, in turn, argue that Petitioner is not entitled to a bond hearing because he is subject to a mandatory detention statute.

Unfortunately, this is not the first time judges have been asked to confront this issue. Indeed, well over 400 district court judges across this country have evaluated the legality and constitutionality of the Department of Homeland Security's ("DHS") new mass detention policy

("DHS Policy").[1] Of those hundreds of judges, nearly all of them have ruled against the DHS

Policy, including this Court in previous habeas corpus cases in the past few months. *See Enrique*

*Leon Macias v. Kevin Raycraft*, Case No. 4:25-cv-2642, 2025 WL 3525262 (N.D. Ohio Dec. 9,

2025). This Court sees no reason to reverse itself, nor any reason to depart from the well-reasoned

analysis supported by the majority—regardless of the preclusive effect of *Bautista II*. And for the

sake of completeness, the Court also takes this opportunity to more wholly spell out the statutory

analysis that was omitted in its previous decision.

For the reasons discussed below, the Court GRANTS the Petition.

## I.  FACTUAL BACKGROUND

Petitioner Ricardo Reyes Rodriguez is a native and citizen of Mexico. ECF 3, ¶ 15. He

states that he entered the United States sometime in 2004 at an unknown location. Conversely,

Respondents state that Petitioner first entered the United States at some unknown time (but prior

to March 31, 1999) and location. ECF 6 at 1-2. Regardless of which of these assertions is correct,

the relevant takeaway is that Petitioner has been in the country for at least twenty years.[2] On

December 27, 2025, Petitioner was detained by Immigrations and Customs Enforcement ("ICE")

pursuant to a Form I-200 Administrative Arrest Warrant. He has been continuously detained in the

sixty-five days since then, up to the date of this Memorandum Opinion and Order.

---

[1] This number is accurate as of February 27, 2026. For a regularly updated list of district court decisions regarding the DHS policy, see https://www.politico.com/news/2026/02/18/trump-judges-immigration-detention-00784614.

[2] It is somewhat confusing what timeline for continuous presence, or lack thereof, in the United States Respondents allege for Petitioner. Respondents allege that Petitioner was granted voluntary departure by an Immigration Judge on October 15, 2002, and subsequently self-deported to Mexico on January 3, 2003. ECF 6 at 2. The Response then states only that Petitioner was "arrested by Painesville Police Department" on September 11, 2025. *Id.* However, the ICE Form I-213 narrative, supplied by Respondents with their Response, alleges that Petitioner was arrested for failure to appear on December 18, 2006. ECF 6-1 at 3. Presumably, Petitioner was physically present in the United States for this arrest to have occurred (and likely some additional period of time beforehand), and Respondents have not alleged that Petitioner was deported, voluntarily or not, at any subsequent time leading up to the instant litigation. Thus, at the absolute shortest, Petitioner has been in country continuously for approximately twenty years.

The same day of his arrest, ICE provided Petitioner with a Form I-862 Notice to Appear ("NTA"), requiring his presence before an Immigration Judge ("IJ") on February 10, 2026. ECF 3-1. The NTA alleged that Petitioner was "an immigrant not in possession of a valid unexpired passport, or other suitable travel document, or document of identity and nationality." *Id.* at 4. Accordingly, the NTA charged Petitioner with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), as someone who entered the United States without being admitted or paroled, and 8 U.S.C. § 1182(a)(7)(A)(i)(I), as someone who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter. ECF 3-2 at 4. Notably, the NTA does not identify Petitioner as an "arriving alien." Rather, the NTA acknowledges that Petitioner is "an alien present in the United States who has not been admitted or paroled." *Id.* at 1; *see also* ECF 7 at 1.

Petitioner asserts that he has not been provided with a custody redetermination hearing, also known as a bond redetermination hearing.[3] Despite not having a hearing, on January 22, 2026, an IJ issued an order denying Petitioner bond because "this Court does not have the authority to redetermine bond in this case." ECF 6-2 at 1. The IJ explains in her written decision, *inter alia*, that *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), was binding on her and deprived her of jurisdiction over Petitioner's bond proceedings. *Hurtado* is a September 2025 Board of Immigration Appeals ("BIA") decision purporting to find that, as a matter of law, all aliens present in the United States without admission may only be subject to detention under 8 U.S.C. § 1225(b),

---

[3] The hearing before the IJ is a redetermination hearing because the initial custody and bond determination is made by a DHS official, typically the direct director. *See* 8 C.F.R. § 1236.1(d)(1) ("After an initial custody determination by the district director, including the setting of a bond, the respondent may, at any time before an order under 8 CFR part 1240 becomes final, request amelioration of the conditions under which he or she may be released.").

3

and never under section 1226(a).[4] Therefore, *Hurtado* explains, an IJ "lack[s] authority to hear bond requests or to grant bond to aliens who are present in the United States without admission."

The IJ's order further states that even "[i]f it were determined that this Court has the authority to redetermine bond in this case, the Court would still deny bond as the Court finds that the Respondent is a danger to the community and a flight risk." *Id.* The IJ, though, does not identify any specific or personalized reason for the assertion that Petitioner is a danger to the community and/or a flight risk.

## II.  PROCEDURAL BACKGROUND

Petitioner filed the present petition on February 10, 2026—forty-five days after he had first been detained by ICE, and nineteen days after the IJ denied bond for lack of jurisdiction. ECF 1, 3. He argues that his continued detention without a full evidentiary bond hearing is a violation of the plain language of the Immigration and Nationality Act ("INA"), relevant bond regulations promulgated by ICE and its predecessors, and his right to Due Process under the Fifth Amendment. ECF 3, ¶¶ 59-70. Petitioner requests that this Court declare his detention unlawful and require Respondents to immediately release him, *id.* at 18; alternatively, Petitioner requests this Court require Respondents to provide him with a prompt bond hearing within five days of the order, ECF 7 at 8.

That same day, the Court issued a show cause order directing Respondents to submit a filing explaining why the instant matter is meaningfully different that the posture in *Leon Macias*, Case No. 4:25-cv-02642 (N.D. Ohio). In that show cause order, the Court observed that:

> Like Mr. Leon Macias, Plaintiff has been in the United States for more than two decades and has no criminal convictions other than traffic citations. ECF 3, ¶¶ 49, 51. And like Mr. Leon Macias,

---

[4] As explained *infra*, a key distinction between section 1225(b) and section 1226(a) is that individuals detained under section 1225(b) are subject to mandatory detention, whereas detainees under section 1226(a) are subject to discretionary detention and are entitled to a personalized bond hearing.

4

> Plaintiff has been charged with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without being admitted or paroled, and 8 U.S.C. § 1182(a)(7)(A)(i)(I), as someone who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter. ECF 3-2 at 4. And just like Mr. Leon Macias, ICE issued a custody determination, without consideration of the merits of Plaintiff's particular situation, to continue Plaintiff's detention without an opportunity to post bond or be released on other conditions. ECF 3, ¶¶ 15, 52. And like Mr. Leon Macias, Plaintiff appears to be detained as part of the Department of Homeland Security's ("DHS") relatively new policy of "consider[ing] anyone inadmissible under § 1182(a)(6)(A)(i)—i.e., those who entered the United States without admission or inspection— to be subject to detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond" ("DHS Policy"). *Id.*, ¶¶ 3, 4.

ECF 4 at 1-2. In *Leon Macias*, the Court determined that petitioner was a member of the bond eligible class certified in *Bautista v. Santacruz*, --- F.Supp.3d ---, 2025 WL 3713987, at *32 (C.D. Cal. Dec. 18, 2025) ("*Bautista II*"), *amending and superseding on reconsideration*, Case No. 5:25-fcv-1873, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), *appeal docketed sub nom.*, *Bautista v. U.S. Dept. of Homeland Sec.*, Case No. 25-7958 (9th Cir. Dec. 19, 2025). Given the significant similarities between Mr. Leon Macias and Petitioner, it appeared that Petitioner is also a member of the *Bautista II* class.

Respondents timely filed their Response on February 17, 2026. ECF 6. In their response, Respondents did not contest the Court's observation that, on the underlying facts, Petitioner would appear to be included as a member of the *Bautista II* class. Instead, Respondents focused on the legal elements of the instant litigation and argue that "[t]his Court should decline to provide preclusive effect to *Bautista* [*II*]." *Id.* at 2. They specifically argue that *Bautista II* has no preclusive effect outside the Central District of California and over custodians who are located outside that district, that this Court should not give preclusive effect to a declaratory judgment that is on appeal, and that according preclusive effect to *Bautista II* would contravene other principles of preclusion.

5

Respondents also note that the Fifth Circuit,[5] since the issuance of *Bautista II* and *Leon Macias*, has accepted the Government's interpretation and application of section 1225(b). *See Buenrostro-Mendez v. Bondi*, Case No. 25-20496, --- F.4th ---, 2026 WL 323330 (5th Cir. Feb. 6, 2026) (holding that undocumented aliens like Petitioner are "applicants for admission" and subject to mandatory detention under the plain language of section 1225(b)).

Petitioner filed his reply in support of his petitioner on February 23, 2026. ECF 7. The matter is now ripe for ruling.

## III. LEGAL STANDARD

"Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). Section 2241 "is an affirmative grant of power to federal courts to issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.' " *Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011) (quoting 28 U.S.C. § 2241(c)). The fundamental protections of habeas corpus also apply in the immigration context. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Indeed, the Supreme Court observed:

> It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders. But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.

*Id.*, 693 (citations omitted).

---

[5] Respondents incorrectly assert that *Buenrotro-Mendez* is the first Circuit Court opinion in the country to address this question. The Fifth Circuit may be the first Circuit Court to issue a full decision on the merits pertaining to the DHS Policy, but it should be noted that, two months prior, the Seventh Circuit also weighed in on the matter by refusing to stay a lower court decision blocking the DHS Policy pending appeal. *See Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (preliminary ruling) (finding that analogous plaintiffs likely had the "better argument"—that section 1226(a) applies— "[b]ased upon the text and structure of the two provisions").

While the district courts' habeas powers are somewhat limited in the immigration context, *see Hamama v. Adducci*, 912 F.3d 869, 876 (6th Cir. 2018) ("Congress stripped the courts of jurisdiction to grant habeas relief" for challenges to removal orders), "[f]ederal courts have habeas jurisdiction to examine the statutory and constitutional bases for an immigration detention unrelated to a final order of removal," *Jiang Lu v. U.S. ICE*, 22 F. Supp. 3d 839, 841 (N.D. Ohio 2014) (citing *Demore v. Kim*, 538 U.S. 510, 517–18 (2003)).

## IV. DISCUSSION[6]

This Petition presents a narrow question: whether Petitioner's detention is governed by section 1225(b)(2)'s [7] mandatory detention provision or section 1226(a)'s discretionary bond provision. Insisting that he should be treated as detained under section 1226(a), Petitioner argues that the Due Process Clause under the Fifth Amendment protects his liberty interests, namely, remaining free from custody during his removal proceedings. *See* ECF 3, ¶¶ 67-70. Respondents retort that the statute requires Petitioner remain in custody without a bond hearing. *See generally* ECF 6. Neither party suggests that any of the INA's other mandatory detention provisions, *see* 8 U.S.C. § 1226(c) (providing for mandatory detention of immigrants accused or convicted of certain crimes); 8 U.S.C. § 1225(b)(1) (providing for mandatory detention of certain asylum seekers who have been present in the United States for fewer than two years), apply here.

---

[6] Respondents do not assert Petitioner has not satisfied any jurisdictional or exhaustion requirements. However, many similar decisions throughout the Sixth Circuit do discuss these issues. Other courts in this district have analyzed jurisdiction of remedies in similar circumstances, such as *Leiva Lemus v. Lynch*, Case no. 4:26-cv-203, 2026 WL 496731, at *2-5 (N.D. Ohio Feb. 23, 2026). This Court incorporates its reasoning into this opinion and finds it has jurisdiction over this habeas petition. Further, no applicable statute or rule mandates administrative or prudential exhaustion in this type of case. For the sake of completeness, the Court incorporates the analysis on exhaustion of remedies from another court in this district, *Echavarria Morales v. Noem*, Case No. 3:25-cv-2691, 2026 WL 100583, at *2-3 (N.D. Ohio Jan. 14, 2026), and the Court waives any exhaustion requirement for the same reasons.

[7] Respondents do not ever plainly state which specific subsection of section 1225(b) they argue applies to Petitioner. However, in discussing the applicability of *Bautista II*, Respondents note that petitioners in *Bautista II* "sought a declaratory judgment that class members such as Petitioner were unlawfully detained under 8 U.S.C. § 1225(b)(2), rather than § 1226(a)." ECF 6 at 2. Accordingly, this Court proceeds with the presumption that Respondents believe section 1225(b)(2) applies to Petitioner in this matter.

Accordingly, this Court limits its analysis to the potential preclusive effect of *Bautista II*, and sections 1225(b)(2) and 1226(a).

### A.  Background on the DHS Policy

Some context is needed to understand Petitioner's claim. The INA governs, *inter alia*, the Government's ability to detain inadmissible aliens by creating two broad categories. Section 235 of the INA, 8 U.S.C. § 1225, generally applies to "certain aliens <u>seeking admission</u> into the country"; Section 236 of the INA, 8 U.S.C. § 1226, applies to "certain aliens <u>already in the country</u> pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (emphasis added in both). While there are a variety of differences between the two sections, the most salient in this matter is that only aliens detained under section 1226(a) are entitled to receive bond hearings at the outset of detention. 8 C.F.R. § 236.1(d)(1); *see also Jennings*, 583 U.S. at 306.

For roughly the past thirty years, DHS has taken the position that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination" under section 1226. 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (interim Immigration and Naturalization Service rule implementing recent amendments to the INA)). However, on July 8, 2025, DHS issued a notice reversing that position and requiring "ICE employees to consider anyone arrested in the United States and charged with being inadmissible as an 'applicant for admission' under 8 U.S.C. § 1225(b)(2)(A)." *Bautista v. Santacruz*, Case No. 5:25-cv-1873, 2025 WL 3289861, at * 1 (C.D. Cal. Nov. 20, 2025) ("*Bautista I*"). "Under § 1225(b)(2)(A), 'applicants for admission' are subject to mandatory detention for proceedings under 8 U.S.C. § 1229(a) and not entitled to the due process protections found within § 1226(a)."

8

*Id.* The DHS Policy was subsequently extended to all IJs when the BIA issued *Hurtado*, ensuring the DHS Policy was now binding precedent on IJs.

### B.  Applicability of *Bautista*

The same day Petitioner initiated this litigation, this Court ordered Respondents to submit a filing explaining how the instant case was materially different from *Leon Macias*, where this Court applied preclusive effect to *Bautista II*. Respondents filed a timely response, and raised three main arguments against applying *Bautista II* to Petitioner.

### 1.  Relevant Background

In several major cities with large immigrant populations, ICE has initiated roving patrols intended to detain allegedly undocumented aliens. In June 2025, during an operation in Los Angeles, ICE detained Lazaro Moldonado Bautista and numerous other aliens. *See Bautista II*, 2025 WL 3713987, at *1. Shortly thereafter, in July 2025, Bautista and his co-petitioners filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 in the District Court for the Central District of California. The petitioners alleged that the new DHS Policy violated the INA, the Fifth Amendment Right to Due Process, and the Administrative Procedure Act ("APA"). Not long afterwards, the petitioners "amended their complaint to include class allegations and requests for declaratory relief as to the legality of Respondents' policies relating to denying bond hearings." *Id.*, at *2.

On November 20, 2025, a district court in the United States District Court for the Central District of California held that this new policy conflicted with the plain statutory language of the INA and violated Due Process. Specifically, the district court held that "applicants for admission," as used in section 1225(a), refers only to those aliens who have not "lawful[ly entered] into the United States *after inspection and authorization by an immigration officer*." *Bautista I*, 2025 WL 3289861, at *9 (emphasis in original) (quoting § 1101(a)(13)(A), which is the INA's definition of

"applicants for admission"). Accordingly, "[i]ndividuals who have not been inspected and authorized by an immigration officer lack the trait to be categorized as 'applicants for admission' " and must be afforded an individualized bond hearing under section 1226(a). *Id.*

Just a few days later, on November 25, 2025, that same district court certified a nationwide class. *Bautista II*, 2025 WL 3713987, at *32. The *Bautista II* class is defined as follows:

> **Bond Eligible Class:** All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

*Id.* The class certification extended the *Bautista I* declaratory judgment that the new DHS policy violated the INA and Due Process, and entitled all class members to the same declaratory relief granted in *Bautista I*. *Id.* In essence, all class members must be treated under section 1226(a). The court did not enter final judgment at this time, however.

On December 18, 2025, the district court issued an "Amended Order consolidating the Court's Orders on Motion for Partial Summary Judgment, Class Certification, and Application for Reconsideration or Clarification." *See Bautista II*. Here, the district court addressed the limitations of petitioners' request for declaratory relief and request for habeas relief. In relevant part, the district court noted:

> The Court...notes Respondents' argument that habeas is an adequate remedy seems to misunderstand Petitioners' requested clarification and relief to sound only in habeas. To the extent Respondents take issue with Petitioners' habeas claims, the available relief is limited to the named Petitioners who were detained and denied individual bond hearings in violation of the INA.
>
> If Petitioners had requested classwide declaratory habeas relief, such relief could extend only to members of the Bond Eligible Class residing within this judicial district. *See Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) (concluding habeas jurisdiction lies "in only one district: the district of confinement"). Therefore, all other

10

members of the Bond Eligible Class would not be afforded relief under habeas. Indeed, that was the nature of this action anyway. The Amended Class Complaint and briefings from Petitioners confirm that habeas relief was sought only as to the named Petitioners. Nowhere in the Amended Class Complaint or Motion for Partial Summary Judgment do Petitioners seek habeas relief on a nationwide level.

*Id.* at *14 (internal citations to the record omitted). Later in the order, when addressing the class certification motion, the district court made clear:

This is not, however, an order by the Court to require Respondents to provide habeas relief for all class members across the nation. Rather, it extends the declaration of the unlawful nature of the DHS Policy to the APA claim, which would thus require the Court to "set aside" that policy. Vacatur, then, would render the very DHS Policy upon which immigration judges ("IJs") and the Executive Office for Immigration Review have cited as grounds for its denial of bond hearings a nullity.

[. . .]

Respondents argue Petitioners ultimately request "habeas relief," which is governed by the immediate custodian rule as well as jurisdictional rules that require a habeas petition be filed within the district of confinement. Respondents are correct about both rules, but they fail to acknowledge that the certified class raises more than just habeas relief.

Although Petitioners requested habeas relief for the Named Plaintiffs, Petitioners' requested classwide relief does not include ordering nationwide habeas relief. . . . The Court readily admits that federal courts are of limited jurisdiction. This Court's jurisdiction to grant habeas relief is limited to those within the judicial district. *See Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) (concluding habeas jurisdiction lies "in only one district: the district of confinement"). In certifying the Bond Eligible Class, the Court only extends its declaratory judgment regarding the illegality of the DHS Policy for purposes of the APA claim. The Court cannot order nationwide release or bond hearings for Bond Eligible class members, especially so to those confined outside this judicial district.

*Id.* at *29-30 (internal citations to the record omitted). Finally, the district court entered final judgment on the relevant claims addressed in *Bautista II*. The case was immediately appealed to the Ninth Circuit, where the appeal remains pending as of the date of this Order.

11

### 2. Preclusive Effect

In their response, Respondents make three arguments against giving *Bautista II* preclusive effect in the instant case: (1) that *Bautista II* has no preclusive effect outside the Central District of California and over custodians who are located outside that district; (2) that this Court should not give preclusive effect to a declaratory judgment that is on appeal; and (3) that according preclusive effect to *Bautista II* would contravene other principles of preclusion.

To be clear, this Court agrees with Respondents, and the District Court for the Central District of California, that habeas relief specifically is constrained to the district where each petitioner is physically detained. *See also Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004) ("jurisdiction lies in only one district: the district of confinement"); *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (per curiam). It is uncontroverted that Petitioner is not being detained in the Central District of California, but is detained in the Northern District of Ohio. This Court also agrees with Respondents that a habeas petitioner must name the petitioner's immediate custodian in order to obtain relief. *Padilla*, 542 U.S. at 444. It is further uncontroverted that Petitioner's immediate custodian is not a named defendant in *Bautista II*.

Where this Court disagrees with Respondents, though, is that these differences alone are sufficient to prevent any application of any part of the holding in *Bautista II* to this case. Respondents argue that the declaratory relief accorded in *Bautista II* "at its core sounds in habeas." ECF 6 at 4. Because Petitioner's "claims for relief necessarily imply the invalidity of [his] confinement[]," Respondents argue that "[his] claims fall within the core of the writ of habeas corpus and thus must be brough in habeas." *Id.* at 2-3 (quoting *J.G.G.*, 604 U.S. at 672); *see also id.* at 3 (citing *Calderon v. Ashmus*, 523 U.S. 740, 747 (1998), for the holding that a declaratory judgment action is not appropriate to address the "validity of a defense the State may, or may not,

12

raise in a habeas proceeding" in part because "the underlying claim must be adjudicated in a federal habeas proceeding").

The *Bautista II* court made very clear that it was <u>not</u> entering any sort of habeas relief classwide, acknowledging that affording "habeas relief on a nationwide level" might offend *Padilla*'s district-of-confinement rule. *Bautista II*, 2025 WL 3713987, at *14. It further acknowledged that several statutory provisions limit trial judges' equitable authority to interfere with immigration and removal proceedings under the guise of habeas. *See, e.g.*, *id.* at *27 (discussing 8 U.S.C. §§ 1252(e)(1)(A) and 1252(f)(1)); *id.* at *23 (discussing 8 U.S.C. §§ 1252(e)(1)(B) and 1252(e)(3)(A)). Respondents may ultimately be correct in asserting these jurisdictional questions. But "[t]he principles of res judicata apply to questions of jurisdiction as well as to other issues." *Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 78 (1939). Supreme Court precedent makes clear that if a jurisdictional question was itself "fully and fairly litigated by the parties and finally determined in" the rendering forum, then that question is not subject to collateral attack in a second forum. *Durfee v. Duke*, 375 U.S. 106, 116 (1963); *see also Ramirez v. Smith*, Case No. 5:25-cv-186, 2026 WL 228778, at *5 n.7 (discussing how *Padilla* "is best read to state a rule of venue, not subject-matter jurisdiction," and therefore not necessarily dispositive of the jurisdictional questions raised by *Bautista II*).

There is no question that the *Bautista II* court litigated and decided these jurisdictional questions, including the ones raised here by Respondents. *See Bautista*, 2025 WL 371987, at *14, *30 (concluding that *Padilla* does not foreclose jurisdiction to grant the declaratory relief entered). Respondents here offer no reason to think the Government had anything less than a full opportunity to litigate the matter in the Central District of California. "If anything, the Government had more opportunity and 'incentive to defend vigorously,' *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330–31 (1979), in a lawsuit that threatened to culminate in a nationwide class judgment paired

with universal vacatur." *Ramirez*, 2026 WL 228778, at *5. As such, questions about the jurisdictional contours of habeas relief and the *Bautista II* decision do not preclude this Court from giving *Bautista II* preclusive effect.

Respondents' second argument also falls flat. It is clear that the "preclusive effect of a final judgment persists even if the judgment in question remains on appeal." *Samayoa v. Smith*, Case No. 5:25-cv-190, 2026 WL 483243, at *3 (W.D. Ken. Feb. 20, 2026) (citing 18A Wright & Miller § 4433 & n.13 (3d ed., supp. Sept. 2025); *see also Federated Dep't Stores v. Moitie*, 452 U.S. 394, 398 (1981) ("A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."); *Deposit Bank of Frankfort v. Board of Councilmen of City of Frankfort*, 191 U.S. 499, 510–12 (1903). This is because "[a] judgment merely voidable [] based upon an erroneous view of the law is not open to collateral attack, but can be corrected only by a direct review." *Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 325 (1927); *accord Moitie*, 452 U.S. at 398–99; *see also Reed v. Allen*, 286 U.S. 191, 200 (1932) ("In every other forum the reasons for passing the decree are wholly immaterial. . . . It cannot be attacked collaterally, and in every other court must be given full force and effect, irrespective of the reasons upon which it is based.") (quotation marks omitted).

Finally, Respondents make a variety of additional arguments that applying preclusive effect to *Bautista II* would contravene other principles of preclusion. The first of these more minor arguments is inapplicable, as it only matters "[t]o the extent this Court considers whether to awarded 'further' relief than what the *Bautista* [*II*] court purported to grant to class members outside the Central District of California" under 28 U.S.C. § 2202. ECF 6 at 6. However, Petitioner's habeas petition "[does not] ask this Court to enforce the *Bautista* [*II*] judgment, but instead to order release notwithstanding the Government's purported rejection of that final, binding ruling." *Samayoa*, 2026 WL 483243, at * 6.

14

Respondents also raise the issue of applying issue preclusion against the Government. ECF 6 at 6. They contend that issue preclusion does not apply against the federal government "where the party seeking to offensively use preclusion was not a party to the initial litigation." *Id.* at 6-7 (citing *United States v. Mendoza*, 464 U.S. 154, 162 (1984)). No one contests that Petitioner was not a named party in the *Bautista II* litigation. Instead, Respondents characterize Petitioner as "merely a member of a fundamentally flawed nationwide class." *Id.* at 7. But for the reasons discussed above, the correctness of the contours of the *Bautista II* class are not up for collateral attack when it is uncontroverted that the Government had a full and fair opportunity to litigate (and did, in fact, litigate) that exact issue in the previous litigation. And as a member of the *Bautista II* class, Petitioner is entitled to use that judgment in offensive preclusion.

To be fair, this Court acknowledges that the two named Respondents in this case—Jerry Greene and Kevin Raycraft—are not named respondents in the *Bautista II* proceedings. But Respondents are simply Petitioner's immediate custodians; that is, Respondents are at the "bottom of the food chain" of custodianship. "There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government." *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402-3 (1940) (citing *Tait v. W. Md. Ry. Co.*, 289 U.S. 620 (1933)). "The crucial point is whether or not in the earlier litigation the representative of the United States had authority to represent its interests in a final adjudication of the issue in controversy." *Id.* at 403. The respondents in *Bautista II* include: DHS; the Executive Office for Immigration Review; ICE; Todd Lyons, as Acting Director of ICE; DHS Secretary Kristi Noem; and Pamela Bondi, as U.S. Attorney General. There can be no serious argument (nor do Respondents attempt to argue here) that, as the agencies and officers at the "top of the food chain," respondents in *Bautista II* had ample authority to represent the interests of Respondents in

15

this matter. Indeed, "[w]here a suit binds the United States, it binds its subordinate officials." *Sunshine*, 310 U.S. at 403.

Respondents' attempt to rely on the "existence of several inconsistent judgments from district courts around the country" to counsel this Court against preclusion is also unpersuasive. ECF 6 at 7-8 (citing, *inter alia*, *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330-31 (1979), for the proposition that "the existence of prior inconsistent judgments [are] indicium of unfairness of applying issue preclusion"). But Respondents ignore the conclusion *Parklane Hosiery* arrives at after considering the potential effect of inconsistent judgments on preclusion: "that the preferable approach for dealing with these problems in the federal courts is not to preclude the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied." *Parklane Hosiery*, 439 U.S. at 331. This Court acknowledges that there are multiple district courts, including some in the Sixth Circuit, that have either declined to grant preclusive effect to *Bautista II* or agree with the Government's interpretation of 8 U.S.C. § 1225(b). But, as previously noted, the overwhelming weight of authority goes against this. Well over 90% of district courts in this country have ruled against the Government in the interpretation of sections 1225(b) versus 1226(a)—the statutory interpretation question at the heart of the *Bautista II* declaratory judgment. *See* Kyle Cheney (@kyledcheney), X (Feb. 27, 2026, at 14:14 ET), https://x.com/kyledcheney/status/2027462439340499014?s=46 (noting, when updating Politico's running list of judges, see *supra* footnote 1, that 393 district court judges have ruled against the Government while only thirty-three have ruled in favor). As already noted, this Court declines to depart from the majority, of which it is already a part.

Finally, Respondents caution this Court that "it is doubtful that issue preclusion is ever appropriate in the habeas context." ECF 6 at 8. But this is beside the point. "Because this Court is merely applying a binding civil judgment, not revisiting any issue in the context of postconviction

review, this argument, too, [does not] limit the effect of the declaration." *Ramirez*, 2026 WL 228778, at *7; *see also*, *supra* (discussing the jurisdictional contours of habeas corpus and declaratory relief).

In sum, this Court finds none of Respondents' arguments persuasive, and thus still finds it appropriate to find Petitioner is a member of the *Bautista II* class and to give that judgment preclusive effect. But even if the Court found otherwise regarding *Bautista II*, the Court's own independent statutory analysis of the relevant detention statutes would dictate the same outcome.

## C.  Relevant Detention Statutes

As noted several times throughout this Order, the two statutes primarily at issue are 8 U.S.C. §§ 1225(b)(2) and 1226(a). The distinction between these two statutes is critical.

As with any statutory analysis, this Court begins with the texts themselves. *See Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009) ("As with any question of statutory interpretation, our analysis begins with the plain language of the statute."). When interpreting statutes, courts "must give effect to the clear meaning of statutes as written." *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (citation and quotation marks omitted). In so doing, the courts "assign each word of the statute its ordinary, contemporary, common meaning . . . , while keeping in mind that statutory language has meaning only in context." *Id.* (citations, quotation marks, and alterations omitted). Finally, "[i]t is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citation and quotation marks omitted).

Section 1226(a) states, in relevant part, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant

for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). "Admission," in turn, is defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

Here, Respondents argue that all "applicants for admission" are also "seeking admission" for the purposes of mandatory detention under section 1225(b)(2). This interpretation, however, would render the term "seeking admission" entirely superfluous of "applicant for admission." *See United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning."); *see also Sumba v. Crowley*, Case No. 1:25-cv-13034, 2025 WL 3126512, at *4 (N.D. Ill. Nov. 9, 2025) ("[T]he [c]ourt rejects as implausible the government's contention that two distinct terms in the same subparagraph— 'applicant for admission' and 'an alien seeking admission'—somehow bear the *same* meaning even though they are (obviously) *different* terms." (emphasis in original)). Indeed, "this presumption is 'strongest when an interpretation would render superfluous another part of the same statutory scheme,' as would be the case here." *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1062 (7th Cir. 2025) (preliminary ruling) (quoting *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013)). This Court will not presume that Congress intended its words to be redundant or superfluous. *See TRW Inc.*, 534 U.S. at 31 (directing courts to construe statutes as to not render any word superfluous).

Respondents' argued interpretation also ignores that "applicant for admission" is a term of art specifically defined by the statute, whereas "seeking admission" is not. "When a statute includes an explicit definition, we must follow that definition, even if it varies from a term's

18

ordinary meaning." *Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160 (2018) (quotations and citation omitted); *see also Buenrostro-Mendez v. Bondi*, 2026 WL 323330, at *12 (Douglas, J., dissenting) ("Congress may . . . define a word or phrase [like 'admission'] in a specialized way" but "absent such [a definition], those whose lives are governed by law are entitled to rely on its ordinary meaning, not left to speculate about hidden messages." (citing *Feliciano v. Dep't of Transp.*, 605 U.S. 38, 45 (2025))). Applying the ordinary meaning only to "seeking admission," the Court finds it significant that the term uses the present participle. This is because "[s]eeking" "implies action[.]" *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 781 (N.D. Ohio 2025). This is "something that is currently occurring, and in this instance, would most logically occur at the border upon inspection." *Id.*[8] Broadening "seeking admission" to also encompass those aliens already present in the country, as Respondents argue, would fail to give effect to Congress' specific choice to use the active term "seeking" when specifying those aliens covered by section 1225(b)(2). *See Carr v. United States*, 560 U.S. 438, 448 (2010) ("Consistent with normal usage, we have frequently looked to Congress' choice of verb tense to ascertain a statute's temporal reach."). Indeed, it would be difficult to say that aliens who have been present in the United States for a considerable time without having been lawfully admitted, such as Petitioner here, are actively "seeking admission."

Further, Respondents' argument contravenes the Supreme Court's holding in *Jennings*. There, the Court clearly and plainly held that section 1226(a) authorizes the government to detain certain aliens "already in the country pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289. The Supreme Court held that understanding in stark contrast with the application

---

[8] On top of this, "[t]he statute also requires that an 'examining immigration officer' determine that the noncitizen is 'seeking admission.'" *Lopez-Campos*, 797 F. Supp. 3d at 781. Indeed, this could not have, and did not, occur under the circumstances of the instant case.

of section 1225(b). *Compare id.* at 287-88 (discussing the application of section 1225(b) to aliens processed "at the Nation's borders and ports of entry"), *with id.* at 288-89 (identifying the relevant group as aliens already present in the United States before plainly stating that "[s]ection 1226 generally governs the process of arresting and detaining that group of aliens pending their removal" (emphasis added)). No subsequent Supreme Court decision has purported to overturn *Jennings*.

To the extent that Respondents argue that Congress may believe that *Jennings* was wrongly decided and the Supreme Court's interpretation of sections 1225(b) and 1226(a) are not what it intended, Congress has been free to amend the law to correct that interpretation. Indeed, Congress amended section 1226 just this past year with the Laken Riley Act, Pub. L. No. 119-1, § 2, 139 Stat 3, 3–4 (2025), when it added a mandatory detention provision to section 1226(c) regarding aliens who have committed certain qualifying offenses. *See* 8 U.S.C. § 1226(c)(1)(E). The relevant language in sections 1225(b)(2) and 1226(a) did not change. Additionally, if section 1225(b)(2) already mandated detention of all immigrants, "then it would be pointless for Congress to mandate the detention of a subset of those unadmitted immigrants using the Laken Riley Act." *Morales Chavez v. Dir. of Detroit Field Off.*, Case No. 2025 WL 2187080, at *7 (N.D. Ohio Nov. 14, 2025).

No matter which way you look at it, Respondents' interpretation of the statutes is incompatible with their desired outcome. And "[u]nfortunately for Respondents, this Court is bound to apply the statutes as they are written—not as Respondents wish they were written." *Lopez Lopez v. Noem*, Case No. 3:26-cv-128, 2026 WL 395202, at *9 (N.D. Ohio Feb. 12, 2026) (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 403 (2024) ("Courts interpret statutes, no matter the context, based on the traditional tools of statutory construction, not individual policy preferences.")).

20

Based on all of the aforementioned reasons, this Court finds that Petitioner is subject to detention under 8 U.S.C. § 1226(a)—not 8 U.S.C. § 1225(b)(2), as Respondents argue.[9] Thus, Petitioner's continued detention without a bond hearing is unlawful, and he is entitled to habeas relief.

### D. Due Process

Separate and apart from the statutory analysis, Petitioner also raises an independent Due Process claim. Indeed, "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings. So, the detainees are entitled to notice and opportunity to be heard appropriate to the nature of the case." *J.G.G.*, 604 U.S. at 673 (quotation marks and citations omitted). Specifically, the Supreme Court has explained that the Due Process Clause protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk. *See Zadvydas*, 533 U.S. at 690-91. And the Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals. *See United States v. Salerno*, 481 U.S. 739, 750-51 (1987); *Foucha v. Louisiana*, 504 U.S. 71, 79 (1992); *Kansas v. Hendricks*, 521 U.S. 346, 360 (1997). The only exception to this line of Supreme Court cases is *Demore v. Kim*, 538 U.S. 510 (2003), where the Supreme Court rejected a due process challenge to the mandatory detention requirement of section

---

[9] As a final aside, Respondents also argue that the Fifth Circuit's decision in *Buenrostro-Mendez* should counsel this Court to hold in their favor. Not only is *Buenrostro-Mendez* not binding on this Court, but, respectfully, this Court disagrees with the Fifth Circuit and other courts adopting the Government's interpretation for the reasons discussed above. While, as Respondents note, this issue is currently pending before the Sixth Circuit, it has not yet been decided. ECF 6 at 9 n.1. Absent any such controlling precedent, this Court declines to depart from its prior reasoning and from the clear majority of courts across the country.

1226(c). Since Petitioner does not fall under the ambit of section 1226(c), *Demore* is clearly distinguishable.

Like all other forms of immigration detention, the discretionary detention under section 1226(a) is constitutionally constrained by Due Process. Respondents observe that Petitioner already had an IJ decide his bond redetermination request. ECF 6 at 2; *see also* ECF 6-2. This Court is hesitant, however, to hold that the "hearing" held on January 22, 2026, in Petitioner's case comported with Due Process requirements, especially seeing as Petitioner notes that "[n]o full evidentiary hearing . . . was conducted." ECF 7 at 2. *See also Azalyar v. Raycraft*, --- F.Supp.3d ---, 2026 WL 30741, at *2 n.4 (S.D. Ohio 2026) (also hesitating to deem an analogous proceeding a "hearing" because "the IJ felt bound by agency guidance that petitioners like Azalyar are not entitled to a true adversarial hearing with the opportunity to present arguments and evidence"). Indeed, the IJ's decision in Petitioner's case contains zero reference to any record or arguments put forth by either party. *See* ECF 6-2 at 1 (denying Petitioner's bond redetermination request exclusively on jurisdictional grounds, and referencing that, in the alternative, Petitioner is "a danger to the community and a flight risk" without supplying any reasoning how the IJ came to such a conclusion).

To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part balancing test set forth in *Matthews v. Eldridge*, 424 U.S. 319 (1976). The Court must weigh: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335.

22

### 1.  Private Interest

The private interest at stake here "is the most elemental of liberty interests—the interest in being free from physical detention by one's own government." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 (noting the same in the context of immigration detention proceedings). Having lived in the United States for at least the past twenty years, Petitioner indisputably has a significant private interest in his freedom from detention. *Cf. Ordonez-Lopez v. United States Dep't of Homeland Sec.*, Case No. EP-25-CV-470, 2025 WL 3123828, at *3 (W.D. Tex. Nov. 7, 2025) ("[N]oncitizens acquire a protectable liberty interest when they spend years establishing a life in the interior of the United States, regardless of their citizenship status.").

### 2.  Risk of Erroneous Deprivation

The second *Matthews* factor asks Courts to consider whether the challenged procedure risks the erroneous deprivation of the petitioner's liberty. While, as Respondents note and as discussed above, Petitioner did technically have a bond redetermination "hearing" on January 22, 2026, that proceeding was constitutionally deficient. As of the date of this Order, Petitioner has not had a merits bond hearing, with counsel and the opportunity to present evidence. As also discussed, civil immigration detention—the form of detention under section 1226(a)—must be non-punitive in purpose and bear a reasonable relation to the statutory purposes of preventing danger to the community and flight. That the IJ's order contains the bare bones "magic words" for detaining Petitioner is insufficient to satisfy this standard. Respondents also put forth no evidence to support the IJ's assertion. Accordingly, the risk of erroneous deprivation of Petitioner's liberty interest is high.

23

### 3.  Government Interest

The final *Matthews* factor concerns the Unites States' interest in the procedure, as well as any financial or administrative burdens associated with permissible alternatives. *Matthews*, 424 U.S. at 335. The Court recognizes that the Government has legitimate interests in ensuring that aliens appear for removal hearings and do not pose a danger to the community. However, a "routine bond hearing" before an IJ presents "minimal" burdens to the United States. *Hyppolite v. Noem*, --- F.Supp.3d ---, 2025 WL 2829511, at *15 (E.D. N.Y. Oct. 6, 2025). These procedures are also already in place. *Id.* Further, Respondents will also have an opportunity to present their case at any proper, personalized bond redetermination hearing, so there is no risk that requiring a proper bond redetermination hearing will impede the Government's interests. Therefore, "existing statutory and regulatory safeguards adequately serve the governmental interest in promoting public safety." *Günaydin v. Trump*, 784 F.Supp.3d 1175, 1190 (D. Minn. 2025).

All three *Matthews* factors favor Petitioner. Accordingly, Due Process entitles Petitioner to an individualized bond hearing on the merits before a neutral IJ.

### E.  Remedy

Having established that Petitioner is properly detained pursuant to section 1226(a), rather than section 1225(b)(2), and that his continued detention without a personalized bond hearing violates Due Process, the Court now turns to fashioning the appropriate remedy in this matter. At first glance, it would seem that all that is needed is for Petitioner to receive the proper, individualized bond hearing that he is statutorily and constitutionally entitled to receive. However, the necessary analysis for this element runs deeper.

In *Jennings*, the Supreme Court held that, while section 1226(a) does not mandate that the Government bear a burden of clear and convincing evidence in immigration bond hearings, it expressly declined to reach whether the Due Process Clause does. *See Jennings*, 583 U.S. at 312

24

(nothing that because the Court of Appeals "had no occasion to consider respondents' constitutional arguments on their merits . . . we do not reach those arguments"). Circuit Courts are split on this question. *See Soto-Medina v. Lynch*, --- F.Supp.3d ---, 2026 WL 161002, at *5 n.2 (discussing how the First, Second, and Ninth Circuits have held that, at least for a first bond hearing, the Government bears the burden of proof of clear and convincing evidence, but that the Third and Fourth Circuits have assigned the burden of proof regarding danger to the community and flight risk to the detainee); *see also id.* (noting that although "the Seventh and Tenth Circuits have not taken up the issue, courts within those circuits have held that due process requires that the government bear the burden of proof"). The Sixth Circuit has not had an opportunity to take up this question.

The BIA has found it reasonable to apply the standard set forth in 8 C.F.R. § 236.1(c)(8), concerning the initial custody decision by an immigration officer upon arrest, to section 1226(a) bond redetermination hearings, thereby placing "[t]he burden [] on the alien to show to the satisfaction of the Immigration Judge that he or she merits release on bond." *In Re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). However, a reliance on an agency regulation is not the same as recognizing whether the Constitution or a statute mandates the burden of proof be allocated to the detainee. Further, this Court is not required to give any deference to an agency interpretation of a statute, *see Loper Bright*, 603 U.S. at 413, and "the BIA lacks authority to review constitutional challenges," *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006).

Accordingly, this Court turns to other district courts in this circuit for guidance on this question. One court in the Western District of Michigan observed:

> In the context of the Due Process Clause, requiring a particular "standard of proof 'serves to allocate the risk of error between the litigants' and reflects the 'relative importance attached to the ultimate decision.' " *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 213 (3d Cir. 2020) (quoting *Addington v.*

*Texas*, 441 U.S. 418, 423, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)). Thus, the Supreme Court has repeatedly reaffirmed that "due process places a heightened burden of proof <u>on the State</u> in civil proceedings in which the 'individual interests at stake ... are both particularly important and more substantial than mere loss of money.' " *Cooper v. Oklahoma*, 517 U.S. 348, 363, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996) (alterations in original; emphasis added) (quoting *Santosky v. Kramer*, 455 U.S. 745, 756, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)); *see also Foucha v. Louisiana*, 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992) (requiring clear and convincing evidence to justify civil commitment because "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause"). "The individual should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state." *Addington*, 441 U.S. at 427, 99 S.Ct. 1804. The Supreme Court, therefore, upheld the application of the "clear and convincing" standard for civil commitment proceedings because "the individual's interest in the outcome of a civil commitment proceeding is of such weight and gravity that due process requires the state to justify confinement by proof more substantial than a mere preponderance of the evidence." *Id.* (emphasis added); *see also United States v. Salerno*, 481 U.S. 739, 751, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (holding that pretrial detention will be permitted under the Due Process Clause "[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community").

*Soto-Medina*, 2026 WL 161002, at \*6. Ultimately, the district court agreed with this reasoning and assigned the burden of proof to the Government. *Id.* at \*11 ("Due process requires that, to deny bond, the government must show by clear and convincing evidence that Petitioner is a flight risk or danger to the community.").

Another court here in the Northern District of Ohio similarly observed:

Many courts also place the burden on the Government to show by clear and convincing evidence that a noncitizen should remain in detention. *Hernandez-Ferndandez*, 2025 WL 2976923, at \*11 (collecting cases). The reasoning for this burden shift is because the "alien's potential loss of liberty is so severe...he should not have to share the risk of error equally." *Id*. at \*10 (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020)).

26

*E.V. v. Raycraft*, Case No. 4:25-cv-2069, 2025 WL 3122837, at *12 (N.D. Ohio Nov. 7, 2025).

Likewise, this court also agreed with this reasoning and assigned the Government the burden of

proving danger to the community or flight risk by clear and convincing evidence.

> A district court in the Eastern District of Kentucky observed similarly:

> While no controlling authority addresses the burden-of-proof question, numerous courts have considered the question under similar circumstances and have concluded that the government must justify continued detention by clear and convincing evidence. *See, e.g., Black*, 103 F.4th at 155-57; *German Santos*, 965 F.3d at 213; *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 721 (D. Md. 2016); *Haughton v. Crawford.* 221 F. Supp. 3d 712 (E.D. Va. 2016). The respondents do not identify any case law to the contrary.

> [. . .]

> Requiring detainees to prove that they are *not* a danger and are *not* a flight risk after the government has already "enjoyed a presumption that detention is necessary ... presents too great a risk of an erroneous deprivation of liberty after a detention that has already been unreasonably prolonged." *Black*, 103 F.4th at 156. *See also Jarpa*, 211 F. Supp. 3d at 721 (noting that the Supreme Court "time and again has rejected laws that place on the individual the burden of protecting his or her fundamental rights").

*M.T.B. v. Byers*, Case No. 2:24-cv-028, 2024 WL 2881843, at *5 (E.D. Kentucky Aug. 20, 2024)

(emphasis in original).

These district courts in the Sixth Circuit are not alone, going back several years and

predating the current DHS Policy. *See, e.g.*, *Azalyar*, 2026 WL 30741, at *5; *Diaz-Calderon v.*

*Barr*, Case No. 2:20-cv-11235, 2020 WL 5645191, at *18 (E.D. Mich. Sept. 22, 2020) ("At the

hearing [under section 1226(a)], Respondents must identify a statutory basis for Diaz's continued

detention and support their request by clear and convincing evidence.").

This Court is persuaded by these district courts in the Sixth Circuit, as well as the majority

of other district and appellate courts around the country that have similarly held that the

Government must bear the burden by proof of clear and convincing evidence. Especially when

27

taking into account this Court's analysis under *Matthews*, the Court finds that Petitioner is entitled to a bond hearing before a neutral IJ, where the Government must bear the burden of proving, by clear and convincing evidence, that Petitioner is either a danger to the community or a flight risk.

## V.  CONCLUSION

For the reasons discussed above, the Court hereby **GRANTS** Petitioner's request for habeas relief. The Court hereby **ORDERS** that Respondents **shall** either: (1) within five business days of this order (i.e., 5:00 pm on Monday March 9, 2026), provide Petitioner with an individualized bond hearing, pursuant to 8 U.S.C. § 1226(a), before a different IJ than the one who issued the detention order against Petitioner, at which the Government shall bear the burden of proof by clear and convincing evidence of justifying Petitioner's continued detention; or (2) immediately release Petitioner from custody. The Court **FURTHER ORDERS** Respondents to file a status report within 48 hours of the bond hearing or Petitioner's release, but no later than 3:00pm on March 11, 2026, certifying compliance with this Order. The status report **shall** inform the Court whether a bond hearing was held and, if so, the outcome of that bond determination and, if bond was denied, the reasons for the denial.

**IT IS SO ORDERED.**

Dated: March 2, 2026

*s/Dan Aaron Polster*
United States District Judge

28